J-A23004-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER VANISTENDAEL, | : | |
| | : | |
| Appellant | : | No. 479 WDA 2013 |

Appeal from the Judgment of Sentence January 22, 2007,
Court of Common Pleas, Venango County,
Criminal Division at No. CP-61-CR-0000197-2006

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED SEPTEMBER 15, 2014**

Christopher Vanistendael ("Vanistendael") appeals from the judgment of sentence imposed following his convictions of involuntary deviate sexual intercourse, corruption of the morals of a minor, and statutory sexual assault.[1]  For the following reasons, we affirm.

We begin with the facts underlying Vanistendael's convictions and the procedural history of this case, which the trial court summarized as follows:

> In May and June of 2004 … the child, A.L., who was born June 8, 1989, was 14-years of age, and then 15-years of age. … She met [Vanistendael], who was then 24-years of age, born April 26, 1989 [*sic*], on May 17, 2014 when she snuck out of her home with a friend to meet [him]. [Vanistendael] was driving his car. There were several people in the car and A.L. rode in the backseat … with several others. A.L. was given Smirnoff malt liquor to drink, and that evening she 'made out' with [Vanistendael] who she was told

---

[1] 18 Pa.C.S.A. §§ 3123, 6301, 3122.

was 24[]years of age. She met him a week later when she was spending the night with a friend. She and her 14-year old friend snuck out and met [him] at a gas station and then drove around. She told the jury she had feelings for [Vanistendael]. On several other occasions[,] A.L. snuck out of her mother and step-father's home through a sliding door in the basement and met [Vanistendael] late at night and they drove around in his car. On one occasion with her friend, Ember, in another car they went to a cabin. … She told [Vanistendael] she was in eighth grade. She had sex with him on this occasion in the cabin and on several other occasions while in [Vanistendael's] vehicle. She acknowledged that they had oral sex several times with her mouth on his penis. She described that [Vanistendael] did ejaculate into her mouth. She also described his mouth and tongue on and in her vaginal orifice. She estimated sexual intercourse 12 to 15 times in his vehicle and in the cabin, and oral sex on most of those occasions. The sex in the cabin was corroborated by at least two witnesses.

\*\*\*

The alleged offenses occurred on or about May 17, 2004 through June, 2004. The trial verdict, after a one (1) day trial, occurred on October 12, 2006. [Vanistendael] was sentenced on January 22, 2007. [He] filed, through new counsel, a Post[]Conviction Relief Act proceeding on August 3, 2007. On March 18, 2010 the Superior Court affirmed the trial court's opinion denying the PCRA but remanded the case for [a] hearing concerning [Vanistendael's] waiver of his right to appeal. The trial court then conducted further hearings on the issue of whether or not [Vanistendael] properly waived his right to a direct appeal. The trial court concluded that counsel had acted properly in initially filing the PCRA by an opinion and order dismissing the PCRA filed on July 2, 2010. The trial court was initially affirmed by the Superior Court with a dissent on the 14th day of July, 2011. However, the Pennsylvania Supreme

Court … reversed the Superior Court and directed the matter be returned to the trial court for the court to make a determination whether [Vanistendael] had waived his right to take a direct appeal. Following the directions from the Supreme Court[,] the trial court, after hearing, entered findings on December 10, 2012, that [Vanistendael] had not waived his right to take a direct appeal and the trial court, by order dated December 10, 2012, granted leave for [him] to take a direct appeal.

Trial Court Opinion, 9/12/13, at 1-4.

Presently, Vanistendael raises the following three issues:

1. Whether statements by the Commonwealth's attorney in closing argument constitute prosecutorial misconduct to the degree that [Vanistendael] was prejudiced and prevented [Vanistendael] from receiving a fair and impartial trial.

2. Whether false representations by the Commonwealth's attorney to the [c]ourt during trial and sentencing hearing constitute prosecutorial misconduct creating bias and prejudice by the trial court and resulting in an unduly harsh and excessive sentence.

3. Whether the sentencing court erred by failing to order a psychological or psychiatric examination of [Vanistendael] and obtain clinic records as set forth by the Supreme Court of Pennsylvania prior to sentencing.

Appellant's Brief at 1.

Vanistendael first argues that the following statements made by Assistant District Attorney Carbone during its closing argument amount to prosecutorial misconduct:

I'm not gonna even say anything about how we wanna put away a preferential predator and how other people – that would be bad; that would be

> wrong; I would not do that. How other people could be harmed if you don't decide this right. That's not what I'm here to do. Do not decide the case on that. Decide it on this evidence; this one victim.

N.T., 10/12/06, at 55-56.

In these statements, despite the facetious manner in which he couched them, Assistant District Attorney Carbone told the jury that unless they convict Vanistendael, other people (impliedly, other children) would be preyed upon by Vanistendael. These statements imposed a heavy burden on the collective conscious of the jury and turned its members' attention away from the task of weighing the evidence before them; as such, there is a strong argument that they do constitute prosecutorial misconduct and that Vanistendael is entitled to a new trial. **See Commonwealth v. Cooper**, 941 A.2d 655, 668 (Pa. 2007) (holding that a new trial is warranted where prosecutor's comments "prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict."). However, the record reveals that Vanistendael did not object to these statements at the time they were made, or, in fact, at any time before the trial court. "A defendant must make a timely and specific objection at trial or face waiver of her issue on appeal." **Commonwealth v. Schoff**, 911 A.2d 147, 158 (Pa. Super. 2006); **see also**

Pa.R.A.P. 302. Accordingly, we must conclude that Vanistendael has waived this issue.[2]

Next, Vanistendael argues that certain "false representations" made by the Commonwealth caused the trial court to be biased against him, which then led to the imposition of an unduly harsh and excessive sentence. Appellant's Brief at 13. The record reveals that the trial court ordered Vanistendael to file a statement of errors complained of pursuant to Pa.R.A.P. 1925(b), but Vanistendael did not include this issue therein. **See** Trial Court Order, 3/25/13; Concise Statement of the Matters Complained of on Appeal, 4/10/13. It is well established that when ordered by the trial court to file a statement of errors complained of on appeal, the appellant must comply and any issue not contained therein is deemed waived for purposes of appeal. **Commonwealth v. Garland**, 63 A.3d 339, 342

---

[2] Despite the lack of objection at trial, the trial court addressed this issue in its Rule 1925(a) opinion. It concluded that when read in context, these statements were a fair rebuttal to statement made by defense counsel that Vanistendael is mentally disabled and deserving of sympathy. Trial Court Opinion, 9/12/13, at 6. We have read the closing arguments of both parties and conclude that any plea for sympathy made by defense counsel was extraordinarily subtle, as the vast majority of his argument was dedicated to challenging the credibility of some of the Commonwealth's witnesses, who were friends of the victim. In fact, defense counsel mentioned Vanistendael's diminished mental capacity only in context of his argument that he was easily manipulated by the victim's friends. **See** N.T., 10/12/06, at 48-49. Even if defense counsel's statement could be viewed as an attempt to curry sympathy for Vanistendael, we cannot agree that a call to save other children by convicting Vanistendael is fair rebuttal thereto. No part of the statement by Assistant District Attorney Carbone at issue responded to anything said by defense counsel in his closing argument.

(Pa. Super. 2013) (holding issue waived where appellant failed to include that specific issue in his court-ordered Pa.R.A.P. 1925(b) statement) Pa.R.A.P. 1925(b)(4)(vii). Accordingly, this issue has been waived, as well.[3]

The third issue raised by Vanistendael is that the trial court erred by not ordering that he undergo a psychological or psychiatric evaluation before sentencing him. Appellant's Brief at 16.[4] He argues that the pre-sentence investigation report ("PSI report") was inadequate and the trial court erred by relying on it without additional information about his mental health. *Id.* at 16-17.

To the extent that Vanistendael argues that the trial court erred as a matter of law by failing to order such tests, he is mistaken. Whether to

---

[3] In his statement of errors complained of on appeal, Vanistendael raised a claim challenging his sentence as "excessive and inappropriate for the particularized facts of the case[,]" but he did not specify a theory as to how or why the sentence was excessive and inappropriate. Concise Statement of the Matters Complained of on Appeal, 4/10/13, at ¶ 7. This general statement does not suffice to preserve the specific allegation of error that Vanistendael has presented in his brief on appeal. *Garland*, 63 A.3d at 342 (finding an issue waived because appellant failed to present the specific issue in his court-ordered Pa.R.A.P. 1925(b) statement).

[4] At no point prior to the imposition of sentence did Vanistendael request that the trial court order such tests or obtain such documents prior to sentencing. In fact, at the sentencing hearing, Vanistendael's counsel affirmed that there were no corrections to be made to the PSI report and when asked whether there was anything beyond the PSI report that he wanted the trial court to consider, Vanistendael's counsel did not raise the issue of psychological or psychiatric testing or records. N.T., 1/22/07, at 12, 24. However, because Vanistendael subsequently raised the issue that the trial court should have obtained these tests in his post-sentence motions, we do not find it waived.

order psychological or psychiatric evaluations is left to the discretion of the trial court. The relevant rule provides that "[a]fter a finding of guilt and before the imposition of sentence, after notice to counsel for both parties, the sentencing judge **may**, as provided by law, order the defendant to undergo a psychiatric or psychological examination." Pa.R.Crim.P. 702(B) (emphasis added). There was no indication at trial that Vanistendael suffered from any psychological disorder such that the trial court should have *sua sponte* divined a need for psychological or psychiatric testing,[5] and Vanistendael's counsel made no request for such testing at any time. **Cf. Commonwealth v. Marshall**, 318 A.2d 724, 724-25 (Pa. 1974) (pre-trial psychiatric evaluation of defendant that found defendant competent to stand trial but recommended continuing therapy and trial counsel's request for funds to hire psychiatrist prompted trial court to order psychiatric testing prior to sentencing).

Vanistendael relies on **Commonwealth v. Carrillo-Diaz**, 64 A.3d 722, 728 (Pa. Super. 2013), but this reliance is misplaced. The issue in **Carrillo-Diaz** was whether it was reversible error for a trial court to impose a sentence without a PSI report or without explaining its reasons for not ordering such a report. This Court held that there is no requirement for a

---

[5] We note that Vanistendael's father testified that in 2003 Vanistendael had been evaluated in Clarion Psychiatric Unit only regarding his "intelligence level" so that he could receive Social Security disability benefits. N.T., 10/12/06, at 228-29.

PSI report, but the salient inquiry is whether the trial court has adequate information before it, from whatever source. We stated,

> [t]he first responsibility of the sentencing judge is to be sure that he has before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing judge must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background. ... The court must exercise the utmost care in sentence determination if the defendant is subject to a term of incarceration of one year or more.
>
> ***
>
> While case law does not require that the trial court order a pre-sentence investigation report under all circumstances, the cases do appear to restrict the court's discretion to dispense with a PSI report to circumstances where the necessary information is provided by another source. Our cases establish, as well, that the court must be apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it.

*Id.* at 725-26 (quoting **Commonwealth v. Goggins**, 748 A.2d 721, 728 (Pa. Super. 2000) (*en banc*)).

As made clear by the excerpt from **Carrillo-Diaz** above, the applicable inquiry is whether the trial court has been apprised of the particular circumstances of the offense and the defendant's personal history and background, from whatever source, before imposing sentence. Here, the

record reveals that the trial court was "apprised of the particular circumstances of the offense[s] … as well as [Vanistendael's] personal history and background," including his limited intellectual capacity and his mental health issues. The trial court had the benefit of not only the PSI report but also a report performed by the Sexual Offenders Assessment Board ("SOAB report"). N.T., 1/22/07, at 34. Addressing the trial court, Vanistendael's counsel emphasized that Vanistendael has an I.Q. of approximately 70 and that he suffers from bipolar disorder, attention deficit disorder and obsessive compulsive disorder. *Id.* at 25. Counsel also informed the trial court that Vanistendael was sexually abused as a child. *Id.* at 24. The trial court stated that in imposing the sentence, it considered the PSI report, the SOAB report and the comments of Vanistendael's counsel. *Id.* at 34. Accordingly, we conclude that the trial court had sufficient evidence of the particular circumstances surrounding Vanistendael's personal history, including his mental health issues. Of particular relevance, it is clear that the trial court did not rely solely on the PSI report. Thus, we reject the argument that the trial court did not have adequate information before it for sentencing purposes.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2014